# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**KRISTIE MICHELE TRENT ASHCRAFT,**

    Plaintiff,

v.                                         **CIVIL ACTION NO. 2:16-CV-102**
                                                **(BAILEY)**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert [Doc. 15]. Pursuant to this Court's local rules, this action was referred to Magistrate Judge Seibert for submission of a proposed report and recommendation ("R&R"). Magistrate Judge Seibert filed his R&R on September 12, 2017, wherein he recommends that the plaintiff's Motion for Summary Judgment be denied, that the defendant's Motion for Summary Judgment be granted, that the decision of the Commissioner be affirmed, and that this case be dismissed with prejudice. (Id.). On September 19, 2017, the plaintiff timely filed objections to the R&R [Doc. 16]. For the reasons set forth below, this Court adopts Magistrate Judge Seibert's R&R.

## I.    BACKGROUND

On June 26, 2013, the plaintiff filed a Title II application for a Period of Disability and Disability Insurance Benefits ("DIB"), alleging disability beginning May 29, 2013 [Doc. 7-2 at 24]. The claim was initially denied on September 24, 2013 (Id.), and again upon

1

reconsideration on November 22, 2013 (Id.). The plaintiff then filed a written request for hearing, and later appeared and testified at a hearing on May 22, 2015, in front of Administrative Law Judge ("ALJ") Karl Alexander. [Id. at 35]. On August 21, 2015, the ALJ entered a decision finding that the plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (Id.).

In accordance with the five-step evaluation process described in 20 C.F.R. § 404.1520, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since May 29, 2013, the alleged onset date. (20 C.F.R. § 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: bipolar I/II disorder without psychotic features; anxiety disorder, not otherwise specified; personality disorder not otherwise specified; and morbid obesity. (20 C.F.R. § 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).
>
> 5. The claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except: should work in a low stress environment with no production line or assembly line type of pace, no independent decision-making responsibilities, and minimal changes in the daily work routine; is limited to unskilled work involving only routine and repetitive instructions and tasks; should have no interaction with the general public, and minimal, no more than occasional interaction with co-workers and supervision.
>
> 6. The claimant is unable to perform any past relevant work. (20 C.F.R. § 404.1565).
>
> 7. The claimant was born on March 31, 1976, and was 37 years old, which is defined as a younger individual, on the alleged disability onset date. (20 C.F.R. § 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English. (20 C.F.R. § 404.1564).

> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 404.1569, 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 29, 2013, through the date of this decision. (20 C.F.R. § 404.1520(g)).

(Id.).

On September 28, 2016, the Appeals Council denied the plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner of Social Security [Doc. 7-2 at 2]. On November 22, 2016, the plaintiff filed the instant action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security for denying the plaintiff's claim for DIB under Title II of the Social Security Act [Doc. 1]. The R&R recommends affirming the decision of the ALJ because that decision complied with the applicable law and regulations and was supported by substantial evidence [Doc. 15 at 9].

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a *de novo* review of any portion of the magistrate judge's recommendation to which objection is timely made. As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." See ***Webb v. Califano***, 458 F.Supp. 825 (E.D. Cal. 1979). Because the plaintiff filed timely objections, this Court will undertake a *de novo* review as to those portions of the report and

recommendation to which objections were made.

An ALJ's findings will be upheld if supported by substantial evidence. See **Milburn Colliery Co. v. Hicks**, 138 F.3d 524, 528 (4th Cir. 1998). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." **Hays v. Sullivan**, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting **Richardson v. Perales**, 402 U.S. 389, 401 (1971)). Further, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." **Sec'y of Labor v. Mutual Mining, Inc.**, 80 F.3d 110, 113 (4th Cir. 1996) (quoting **Consolo v. Fed. Mar. Comm'n**, 383 U.S. 607, 620 (1996)). The issue is not whether a claimant is disabled, but whether the ALJ's finding of disabled or not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. **Meyer v. Astrue**, 662 F.3d 700, 704 (4th Cir. 2011) (citing **Craig v. Chater**, 76 F.3d 585, 589 (4th Cir. 1996)).

## III.    DISCUSSION

In response to the magistrate judge's R&R, the plaintiff asserts two main objections, with several subparts. First, the plaintiff claims that the Magistrate Judge's[1] findings allow the ALJ to supplant the treating source medical opinions by allowing the ALJ to review Ashcraft's activities of daily living and determine that such activities are inconsistent with

---

[1] This Court notes that plaintiff's counsel uses the title "Magistrate" throughout plaintiff's objections. This Court feels compelled to distinguish a "magistrate" from a "United States Magistrate Judge." A United States Magistrate Judge, such as Magistrate Judge Seibert, is required to have a law degree, is appointed by Federal judges, and is governed by the United States Code.  See 28 U.S.C. § 631 *et al.*  A West Virginia County "magistrate," on the other hand, is an elected official who works under the supervision of the Supreme Court of Appeals of West Virginia, and is not required to be a lawyer.

4

Ashcraft's allegations [Doc. 16 at 1]. In the subparts, the plaintiff argues as follows: (a) despite using the words "partial weight," the ALJ did not really rely on the state agency evaluators; (b) the ALJ did not rely on treating source opinions, nor recognizes a treating doctor's opinion; and (c) the magistrate judge's reasons for finding the ALJ's position to be supported by substantial evidence are not based on the record.

### A. The ALJ did not supplant the treating source medical opinions by reviewing Ashcraft's activities of daily living.

The plaintiff first claims that the magistrate judge permits the ALJ to produce an opinion that does not give explicit weight to all of the medical opinions in the record [Doc. 16 at 1]. Thus, she argues the ALJ supplanted the treating source evidence by producing his own medical interpretation of Ashcraft's activities of daily living. In support, the plaintiff argues that despite using the words "partial weight," the ALJ did not really rely on the state agency evaluators' evaluations. Plaintiff asserts that the defendant admits that the ALJ found more limitations than found by the state agency reviewers, which plaintiff asserts proves that the ALJ did not rely on the state agency opinions at all. As such, the plaintiff objects to the R&R's finding indicating that the ALJ's "partial weight" given to the state agency evaluators was enough to rise to the level of substantial evidence.

Plaintiff asserts the ALJ neither relied on treating source opinions, nor recognized a treating doctor's opinion [Doc. 16 at 2]. The plaintiff argues that the R&R does not hold the ALJ to his duty of fairly and explicitly evaluating all opinion evidence. Specifically, plaintiff asserts that the ALJ gave little weight to Ashcraft's treating sources, and the ALJ did not indicate whether his opinion was affected by the fact that a treating doctor provided an opinion. This flawed argument will be discussed at length below.

5

The plaintiff contends that in determining plaintiff's RFC, the ALJ improperly discounted the opinions of medical experts contained in the record, and instead based his finding on his own perception of plaintiff's capabilities based on what she reports being able to do on a day-to-day basis.[2] Plaintiff goes on to argue that this is a legally insufficient method for determining plaintiff's RFC and thus requires remand. The Court disagrees.

In determining whether a claimant is disabled, the ALJ always considers the medical opinions in the case record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b). Generally, more weight is given to a medical source who has treated the claimant than to one who has not. 20 C.F.R. § 416.927(c). Other factors considered when evaluating how much weight to give a medical source include: length and frequency of treatment relationship, nature and extent of treatment relationship, the supportability of the findings, the consistency when compared against the record as a whole, whether the physician is a specialist, and any other factors brought to the ALJ's attention which tend to support or contradict the findings. Id.

Here, there was substantial opinion evidence that supported the ALJ's determination of the plaintiff's RFC. Drs. Ann Logan and David Allen, the state agency consultants, found that the plaintiff had only mild restrictions in daily living activities and social functioning. R. 32. Therefore, when the ALJ chose to afford "some" weight to Drs. Logan and Allen, plaintiff's chances for a finding of disability actually increased. Furthermore, 20 C.F.R. § 416.927(d) provides that opinions on some issues are not medical opinions; rather they are

---

[2] The plaintiff clearly overlooks the ALJ's additional consideration of claimant's medically determinable impairments of diabetes mellitus, GERD, high cholesterol, hypertension, multiple hypomanic and depressive incidents, chronic irritability, history of polysubstance abuse in reported remission, and anxiolytic abuse [Doc. 7-2 at 27].

"opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." Id. This includes determinations about whether a claimant is disabled or unable to work. Id. The regulation goes on to state that although "we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . . your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner." Id. In conclusion, 20 C.F.R. § 416.927(d)(3) states that special significance will not be given "to the source of an opinion on issues reserved to the Commissioner." Id.

While the plaintiff maintains that the ALJ "discounted all of the psychological opinion evidence and then formulated his own opinion as to how severe Ms. Ashcraft's psychological limitations were," 20 C.F.R. § 416.927 indicates that taking into consideration all of the evidence available to him and using that evidence to formulate an opinion about the plaintiff's RFC is precisely what the ALJ is tasked with doing. Additionally, 20 C.F.R. § 404.1527(c)(3) states that the more medical evidence there is to support a medical opinion, the more weight it will be given. Indeed, as stated above, the supportability of the findings is an expressly named consideration when evaluating opinion evidence. 20 C.F.R. § 416.927(c).

Plaintiff asserts the reasoning in the R&R for finding the ALJ's position to be supported by substantial evidence is not based on the record. Specifically, the plaintiff asserts that the R&R cites to the defendant's regulations concerning "opinions on issues reserved to the Commissioner," and questions how a treating source infringes on an issue reserved to the Commissioner when the treating source provided an opinion as to plaintiff's

limitations where the Commissioner's rules indicate that treating sources are capable of providing opinions as to the applicant's limitations. Plaintiff further argues that the ALJ substituted his own medical opinion instead of medical experts' opinions to formulate an RFC. Plaintiff argues the ALJ did not rely on medical opinions and indicated that Ashcraft's activities of daily living "are not consistent with a totally disabled individual." Tr. 31. Thus, plaintiff argues the ALJ compared Ashcraft's activities of daily living against the wrong legal standard. See **Louk v. Colvin**, 2016 WL 738314, 19 (N.D. W.Va. 2016).

Plaintiff asserts that while the record contains objective evidence, the magistrate judge indicated that Ashcraft points to no objective evidence to support her position. The plaintiff then goes on for two pages in her objections listing examples of what she categorizes as objective evidence from the record [Doc. 16 at pp. 4-6]. For example, plaintiff notes that treating sources indicated objective medical signs such as "cries during follow up visits, [] rubs her arms excessively due to anxiety, appears exhausted, difficulty finding right words and stutters at times." [Doc. 16 at 7]. Plaintiff asserts the ALJ does not explain why the evidence he cited was more probative of Ashcraft's limitations when the treating sources were aware of such evidence and providing opinion that was contradictory to the ALJ's position.

The plaintiff relies heavily on **Forquer v. Colvin**, which holds that an ALJ may not discount all medical opinion evidence and rely instead upon plaintiff's daily living report. 2016 WL 4250364. However, as the magistrate judge points out, a more recent case decided by the same Court held that "[a]n ALJ need not credit one of the medical opinions in order to support a decision; rather what the ALJ must consider is the evidence of record,

8

which may contain medical opinions." ***Lafferty v. Colvin***, 2017 WL 836917 (N.D. W.Va. 2017). Here, the ALJ did not rely solely on plaintiff's daily living report; rather he considered the record as a whole and gave clear reasoning for each conclusion reached. Therefore, the amount of weight given to each source by the ALJ was permissible and supported by law.

Next, the plaintiff asserts that the ALJ did not meet his requirement of explicitly indicating the weight given to all medical evidence as in ***Lafferty v. Colvin***, 2017 WL 836917 (N.D. W.Va. 2017). The plaintiff compares this case instead to ***Forquer v. Colvin***, 2016 WL 4250364 (N.D. W.Va. 2016), in which the ALJ did not provide clear reasoning based on the ALJ's non-reliance on any particular medical opinion and "simply pitted his own interpretation of activities of daily living against those of the treating sources." [Doc. 16 at 8].

The defendant contests that, contrary to the plaintiff's objections, the magistrate judge properly upheld the ALJ's evaluation of the medical opinion evidence in evaluating plaintiff's RFC [Doc. 17 at 1]. Defendant notes that under the governing regulations, the ALJ was not required to rely on a specific medical opinion in assessing the legal issue of plaintiff's RFC; rather, the ALJ was tasked with considering the medical opinion evidence in conjunction with the record evidence as a whole, and independently making a RFC finding. Defendant argues that the ALJ did just that. Accordingly, defendant asserts that because the substantial evidence supports the ALJ's RFC determination, the R&R should be adopted. As noted above, this Court agrees.

Plaintiff again argues, however, that the ALJ relies only on plaintiff's daily living

9

reports in reaching his conclusions, and the substantial evidence does not support the ALJ's findings. The Court disagrees. As noted by the magistrate judge in his R&R, to be persuaded by this argument, the Court would have to agree with plaintiff's contention that the ALJ improperly discounted all relevant medical evidence and instead formulated his own opinions about the severity of plaintiff's impairments without substantial evidence from the record to support that position. For reasons discussed above, the Court finds that the ALJ's conclusions were well reasoned, supported by substantial evidence, and therefore legally sufficient.

Although this part of the plaintiff's argument is similar to the first, plaintiff does add here that the ALJ improperly referred to plaintiff's treatment as "conservative," and in doing so, committed an error of law. [Doc. 16]. The plaintiff argues that her treatment was not conservative, and should not be a basis for the ALJ's findings. Id. The defendant contends that the R&R correctly found the ALJ was justified in considering the conservative nature of the plaintiff's treatment in evaluating her subjective complaints and her overall disability claim. See Doc. 16 at 8-10. Defendant asserts the regulations authorize an ALJ to consider a claimant's past treatment in evaluating her subjective complaints. See 20 C.F.R. § 404.1529(c)(3). Accordingly, defendant argues that the R&R should be adopted because the ALJ's characterization of plaintiff's past treatment as conservative was within his zone of discretion in interpreting the medical evidence. This Court agrees.

According to 20 C.F.R. § 404.1529(c)(3), it is appropriate for an ALJ to consider things such as plaintiff's current or past treatment; and any medication including the dosage, effectiveness, and side effects of that medication. Furthermore, treatment that the ALJ deems conservative is an adequate basis for contradicting medical opinion evidence

10

suggesting otherwise. *Dunn v. Colvin*, 607 F.App'x. 264, 273 (4th Cir. 2015). Finally, the ALJ is entitled to a "zone of choice within which the decision makers can go either way, without interference from the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision. Id. (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Therefore, when considering the lack of objective evidence to substantiate plaintiff's claims, and opinions by the state agency consultants to the contrary, the ALJ's statement that "the claimant has a treatment history that fails to demonstrate a condition of the degree of severity for which the claimant has alleged. The claimant . . . has sought only conservative treatment" is not counter to guidelines and his analysis is legally sufficient and supported by substantial evidence.

In this case, the ALJ stated his reasons for classifying plaintiff's treatment as conservative. He states, for instance, "the claimant received no more than conservative medical treatment due to physical conditions during the entire period at issue, only presenting to her primary care physician for routine treatment. Additionally, the undersigned notes that the longitudinal record reflects that the claimant has received no significant treatment due to hypomanic depressive incidents and the claimant's history of polysubstance abuse and anxiolytic abuse resulted in no more than a minimal limitation upon functioning." [Doc. 7-2 at 27]. Other records noted in the ALJ's decision state that "after a short hospitalization, the claimant was released with improved symptoms." (Id. at 28). The ALJ later notes "[t]reatment records reflect that the claimant presently only goes monthly to appointments, thus, indicating that the claimant's symptoms were not as severe

as alleged. Exhibit 11F." (Id. at 31). Finally, the ALJ notes that claimant was discharged from the crisis unit "after only a few days [] at which time the claimant had 'achieved her goals.'" (Id.).

The plaintiff next points out that the R&R relies on **Dunn v. Colvin**, 607 F.App'x. 264, 273 (4th Cir. 2015), for the proposition that an ALJ may discount a medical opinion if the ALJ determines that the medical opinion was based on conservative treatment. The ALJ must, however, provide a logical bridge from the evidence to his conclusions. See **Louk v. Colvin**, 2016 WL 7383814, 24 (N.D. W.Va. 2016)(citing **Craft v. Astrue**, 539 F.3d 668, 673 (7th Cir. 2008)). The plaintiff further acknowledges that the Fourth Circuit has indicated that "conservative" treatment can be a factor against the severity of a medical impairment, but asserts that the ALJ did not explain what treatment was "conservative." [Doc. 16 at 9]. As noted above, the ALJ gave a thorough explanation of the treatment he considered to be conservative.

**B.     The ALJ's decision sufficiently considered evidence of record.**

The plaintiff next argues that the ALJ did not properly consider all of the relevant evidence and thus that the ALJ's error was not harmless. [Doc. 18 at 3]. She then contends that the magistrate judge erred by applying an improper legal standard regarding an ALJ's duty to consider and discuss relevant evidence, and that the magistrate judge incorrectly found that the ALJ sufficiently discussed the relevant medical evidence.

1.     <u>The magistrate judge applied the correct legal standard</u>.

The standard that a reviewing court will look for simply requires an indication that the ALJ considered the entire record and, unless the reviewing court can find evidence to

the contrary, this indication will be affirmed. In other words, if the ALJ states that he considered the entire record in reaching his decision, and the reviewing court cannot find anything to suggest that the ALJ did not consider the entire record in reaching his decision, the fact that the ALJ considered the entire record–i.e. all of the evidence, both agreeable and conflicting–will be taken as true. Whether evidence to the contrary exists is a matter for the reviewing court, not for the ALJ to simply declare unchecked, as the plaintiff interprets the standard. Indeed, the plaintiff's fears may be eased as this Court has conducted *de novo* review of this objectionable portion of the magistrate judge's R&R.

The standard applied by the magistrate judge in his R&R is the correct standard. "Judicial review of a final decision regarding disability benefits under the Social Security Act . . . is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." **Hays**, 907 F.2d at 1456. The standard requires a determination of whether the decision reached by the ALJ is supported by substantial evidence found in the record. Implicit in this standard is that evidence conflicting with the ALJ's decision must not outweigh evidence supportive of the ALJ's decision. Should this Court determine that an excessive amount of conflicting evidence exists in the record that the ALJ did not sufficiently address in his opinion, "evidence to the contrary" exists, and this Court cannot accept the ALJ's contention that he considered the entire record. As such, the ALJ's findings will be upheld if supported by substantial evidence, which is evidence that a reasonable mind might accept as adequate to support a conclusion. See **Milburn**, 138 F.3d at 528; **Hays**, 907 F.2d at 1456. This Court's function is to examine the ALJ's decision and determine whether substantial

evidence exists in the record to support the same. Analyzing the purported weight given to the evidence is part of the inquiry.

2. The magistrate judge properly found that the ALJ considered all relevant evidence.

The plaintiff avers that the magistrate judge's finding that the ALJ sufficiently discussed the relevant medical evidence and his reasons for determining that the plaintiff's severe impairment are inconsistent with what the ALJ actually did. This argument is unpersuasive as the ALJ did, in fact, make a finding that the plaintiff has severe impairments. [Doc. 7-2 at 26]. Nonetheless, this Court has conducted *de novo* review of the evidence of record and finds that the ALJ, in making his findings, did consider all relevant evidence, and that the magistrate judge properly found the same.

As correctly stated by the magistrate judge, an ALJ is required to consider all of the relevant medical evidence submitted by a claimant. 20 C.F.R. § 416.920. However, an ALJ is "not obligated to comment on every piece of evidence presented." **Pumphrey v. Comm'r of Soc. Sec.**, 2015 WL 3868354, at *3 (N.D. W.Va. 2015); **Reid v. Comm'r of Soc. Sec.**, 769 F.3d 861, 865 (4th Cir. 2014). Instead, an ALJ's decision need only "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating [his or her] determination and the reason or reasons upon which it is based." **Id**. In other words, an ALJ need only "provide a minimal level of analysis that enables [a] reviewing court[] to track the ALJ's reasoning." **McIntire v. Colvin**, 2015 WL 401007 (N.D. W.Va. 2015). Therefore, if an ALJ states that the "whole record was considered, . . . absent evidence to the contrary, we take [him] at [his] word." **Reid**, 769 F.3d at 865.

The ALJ begins his discussion of his findings of fact and conclusions of law by asserting that he gave the entire record "careful consideration." [Doc. 7-2 at 24]. He again iterates, and the discussion of his findings make clear, that he considered the entirety of the evidence in making his evaluations. [Id. at 26].

Furthermore, as noted by the standard, the ALJ need not comment on every piece of evidence presented. This appears to be the plaintiff's chief concern, as reflected by the fact that the evidence she cites to in the initial brief and again refers to in her objection consists of the few documents in the record not explicitly cited to by the ALJ in his discussion of his finding. Moreover, had the ALJ's discussion of the plaintiff's severe impairments specifically referenced these medical records that the plaintiff claims were ignored, his conclusion that the plaintiff has the severe impairments would have been the same because this evidence supports that conclusion. As such, the plaintiff has not even presented evidence contradictory to the ALJ's findings, let alone evidence that would serve to undermine the ALJ's assertion that he considered the entire record in conducting his evaluation. Upon review of the record, this Court finds that the magistrate judge properly found that the ALJ considered all of the relevant evidence when he determined that the plaintiff has severe impairments, and the plaintiff's objection is **OVERRULED**.

C.     **The ALJ properly considered the plaintiff's credibility.**

As articulated by the Fourth Circuit, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." ***Craig v. Chater***, 76 F.3d 585, 594 (4th Cir. 1996). First, the ALJ must expressly consider whether the claimant has demonstrated, through objective medical evidence, that a medical impairment exists that

15

is capable of causing the degree and type of pain alleged. *Id*.  Notably, objective medical evidence is, for example, medical records compiled by medical professionals rather than subjective complaints of pain or a condition.  Here, after consideration of the evidence that included a multitude of medical records, the ALJ determined that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . .." [Doc. 7-2 at 30].  Thus, the ALJ complied with the first step of the analysis.

The second step, as defined by the Fourth Circuit, is for the ALJ to consider the credibility of the plaintiff's subjective allegations of pain in light of the entire record.  ***Craig***, 76 F.3d at 595.  Social Security Ruling 96-7p[3] sets out several factors for an ALJ to use when assessing the credibility of a claimant's subjective symptoms and limitations, which include:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . .; and

---

[3]The Court notes that SSR 96-7p was superseded by SSR 16-3p, effective March 28, 2016. However, SSR 96-7p was the effective statute at the time of the ALJ's opinion, and its application remains pertinent in this case.

16

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p.

Review of the ALJ's decision indicates that the ALJ did, in fact, utilize and consider these factors in analyzing the plaintiff's credibility. Factors, unlike elements, are a list of considerations that *may* be made in making a determination; the use of each factor is not mandatory. An ALJ has "no requirement that he state specific findings as to each factor." ***Wolfe v. Colvin***, 2015 WL 401013, at *4 (N.D. W.Va. 2015). However, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. Because the ALJ has the opportunity to observe the demeanor of the plaintiff, the ALJ's observations concerning the plaintiff's credibility are given great weight. ***Shively v. Heckler***, 739 F.2d 987, 989 (4th Cir. 1984). If the ALJ meets his basic duty of explanation, then "an ALJ's credibility determination [will be reversed] only if the claimant can show [that] it was 'patently wrong.'" ***Sencindiver v. Astrue***, 2010 WL 446174, at *33 (N.D. W.Va. 2010) (quoting ***Powers v. Apfel***, 207 F.3d 431, 435 (7th Cir. 2000)).

The ALJ found that the plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible" for the reasons he elaborated upon throughout his opinion. [Doc. 7-2 at 30]. The ALJ's articulated factors that undermine her credibility include: (1) evidence of over-reporting of symtomatology on a psychological evaluation; (2) Dr. Yost reported she was not forthcoming in her reports of

17

social history and initially denying cocaine abuse; and (3) the list of the plaintiff's activities, which did not appear significantly limited. (Id. at 31). The ALJ also explained specific evidence from her medical record that undermined her credibility and that several medical reports indicated symptoms that were not as severe as the plaintiff claimed them to be. (Id.). Throughout his explanation, the ALJ addressed the weight accorded to the opinions of the various medical professionals who had assessed the plaintiff. (Id.).

As explained herein, this Court is concerned with whether the ALJ's finding that the plaintiff was not disabled as defined by the Social Security Act is supported by substantial evidence and was reached based upon a correct application of the relevant law. **Meyer v. Astrue**, 662 F.3d 700, 704 (4th Cir. 2011) (citing **Craig v. Chater**, 76 F.3d 585, 589 (4th Cir. 1996)). The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." **Sec'y of Labor v. Mutual Mining, Inc.**, 80 F.3d 110, 113 (4th Cir. 1996) (quoting **Consolo v. Fed. Mar. Comm'n**, 383 U.S. 607, 620 (1996)). As such, the fact that evidence exists that contradicts the ALJ's ultimate finding is not fatal if "evidence that a reasonable mind might accept as adequate to support a conclusion" exists to support the ultimate finding. See **Hays v. Sullivan**, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting **Richardson v. Perales**, 402 U.S. 389, 401 (1971)).

The plaintiff's objection reflects a misunderstanding of the ALJ's opinion. The record shows that the plaintiff does, in fact, have impairments, and the ALJ acknowledged that the plaintiff is impaired. However, pursuant to his RFC evaluation, the ALJ found that the plaintiff's impairments were not as severe as she alleged and did not cause her to be

disabled as defined by the statute.

In reviewing the ALJ's decision and the entirety of the administrative record, it is apparent to the Court that the ALJ was successful in ensuring that his opinion was thorough and well-founded in the plaintiff's medical history. The ALJ provided continual support for his findings with citations to the evidence of record. Review of the record indicates that the ALJ's decision is, in fact, supported by substantial evidence that a reasonable mind would accept as adequate to support his ultimate conclusion. The ALJ was not required to mention each specific piece of evidence contained in the record, and there is nothing to suggest that the ALJ did not actually consider the entirety of the record. For all of the foregoing reasons, this Court finds that the ALJ's decision is supported by substantial evidence, and the plaintiff's objection is **OVERRULED**.

## IV.    CONCLUSION

Upon careful consideration of the above, it is the opinion of this Court that the **Report and Recommendation [Doc. 15]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. Further, the plaintiff's Objections **[Doc. 16]** are **OVERRULED**. Thus, the defendant's Motion for Summary Judgment **[Doc. 12]** is **GRANTED**, and the plaintiff's Motion for Summary Judgment **[Doc. 10]** is **DENIED**.

Accordingly, this Court hereby **DENIES** and **DISMISSES WITH PREJUDICE** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** that this matter be **STRICKEN** from the active docket of this Court. The Court further **DIRECTS** the Clerk to enter judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: October 2, 2017.

*[Signature]*

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE